In re BURNS.

(District Court, S. D. Georgia, W. D. May 12, 1909.)

1. FRAUDS, STATUTE OF (§ 131*)—CONVEYANCE OF LAND—EQUITABLE MORTGAGE.

A bankrupt borrowed $1,500 from decedent, and executed as security a warranty deed, taking back a bond for title, providing for reconveyance when the debt was paid. Two years thereafter the bankrupt obtained an additional loan from decedent, making the total indebtedness $3,593.53. The original note was then canceled, a new one made, and the bond for title altered by striking out the due date and interlining a description of the new note; but by inadvertence the words "fifteen hundred dollars," originally appearing in the bond, were not stricken, nor was the bond re-executed. Held, that the deed and bond, as a mortgage for the in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

creased indebtedness, was not unenforceable under the statute of frauds, on the theory that the new agreement was by parol.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 131.*]

2. MORTGAGES (§ 257*)—LIENS—PRIORITY.

A bankrupt executed a deed to decedent to secure a loan for $1,500, and afterwards borrowed more money, so as to increase the debt to $3,593.53; the bond for reconveyance being then changed to describe the new note, but omitting to strike the words "fifteen hundred dollars," originally describing the debt. Thereafter the bankrupt conveyed all his interest in the bond for title to petitioner. *Held*, that petitioner was charged with notice of the fact that the deed and bond were intended to secure the increased indebtedness, and was therefore not entitled in equity to a reconveyance of the property on payment of the $1,500 and interest.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 684; Dec. Dig. § 257.*]

In Bankruptcy. Petition of Virginia-Carolina Chemical Company to review order of referee.

Walter T. Johnson, for petitioner.
M. P. Hall, in pro. per.

SPEER, District Judge. On January 15, 1903, Burns, now bankrupt, borrowed from one Leonard $1,500, and gave as security a warranty deed for certain valuable lands. Contemporaneously Leonard gave to Burns a bond for title, conditioned to reconvey the land when the note given in evidence of the debt was paid. Thereafter, on December 12, 1905, Burns obtained from Leonard an additional sum, making his total indebtedness to the latter, including interest, $3,593.53. The original note was canceled, and a new note was given to Leonard by Burns for the entire amount of the first loan and the second, and this was made payable April 12, 1906. Leonard was very ill at the time, and in fact died in four days. The second contract was made at his bedside. It is not in dispute that it was the intention both of Burns and Leonard that the warranty deed would secure, and that the bond for title would relate to, the entire indebtedness. With this end in view, certain interlineations were made in the bond for title. The words "on May 15, 1903," were stricken, and the promissory note was described as "dated Dec. 12, 1905, for $3,593.53, due April 12, 1906." This sum, expressive of the entire loan thus secured, was written in figures on the face of the bond for titles. By inadvertence the words "fifteen hundred dollars," originally appearing therein, were not stricken. Subsequently thereto Burns, who had a current account with the Virginia-Carolina Chemical Company for fertilizers sold him, conveyed to that company his interest in the bond for title. This conveyance was made on the 19th day of August, 1908. It obviously conveyed his equity of redemption only.

The conflict here is between the administrator of Leonard, whose claim is sufficient to cover almost the entire proceeds of the lands conveyed to secure the debt of Leonard, and the Virginia-Carolina Chemical Company, which insists that it has a lien of prior dignity, because it holds Burns' equity of redemption. This is based upon the contention that the extension of the original indebtedness between Burns and

Leonard was merely a parol agreement, that there was no additional or new signature to the original instrument, and that the only amount which can be held to be secured by the deed to Leonard was the original $1,500. Upon this contention the Chemical Company bases its claim. for the surplus in the proceeds of the property sold by the trustee, over and above that sum. A very learned and interesting argument in support of the latter contention has been made by the counsel for the Chemical Company. It is contended that the transaction at the bedside of Leonard cannot be construed to extend the conveyance of the land, so as to secure the second advance made by Leonard, for the reason that it was not.signed anew; and many authorities are referred to in support of this contention. It is said to be merely a verbal understanding between Leonard and Burns, and as violative of the statute of frauds, and also of section 2693 of the Civil Code of Georgia of 1895, which provides:

"That any contract for sale of lands, or any interest in or concerning them, * * * must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized."

After giving careful consideration to the technical contention of the Chemical Company, it is found that the true equity of the case depends upon the considerations following: The original deed of warranty was undoubtedly valid to convey lands much more valuable than the small debt which it was intended to secure. The genuineness of the entire transaction between Leonard and Burns is unquestioned. It was all consummated before the Chemical Company appears on the scene. The additional loan, the distinct interlineation in the bond for title, although unsigned, and the execution of the new note, would in equity unquestionably be binding on Burns in a controversy between Burns and Leonard. Such a court, if necessary, would oblige Burns to perfect his conveyance, so as to secure the additional loan. Between the parties, equity would require that to be done which clearly ought to have been done. The transaction, however, cannot be determined as strictly verbal. The execution of the new note and the interlineation in the bond for titles shows this to be true. It may be conceded that this might not present an equitable lien which would be good against the pledge of an innocent third party who had no knowledge of the facts, or a bona fide purchaser without notice. No such person appears in this case. The Chemical Company, when it sought to secure a debt long antecedent to the transfer from Burns of his equity of redemption, did so with full knowledge that Burns owed Leonard a sum largely in excess of the $1,500 he had originally borrowed. This appeared also from the face of the bond for titles and the interlineation making the debt read $3,-593.53. Clearly this was sufficient to put the Chemical Company on notice of Burns' obligation to Leonard. The duty of inquiry followed, and inquiry would have demonstrated the prior and superior right of Leonard as evidenced by his second note, the interlineation in the bond for titles, and the warranty deed. Since the facts were such as to put the Chemical Company on notice, it is chargeable with notice of all the facts that inquiry might have developed, and that it failed to inquire does not help.its contention.

Both of the claimants have equities; but the equity of the administrator of Leonard is deemed superior to that of the Chemical Company, which took only the right remaining to Burns. As Burns would have had no right at all as against Leonard, the Chemical Company takes nothing.

For these reasons, I conclude that the finding of the referee was correct, his judgment will be affirmed, and the petition for review denied.